**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| DENISE MOULDS THOMAS, <br><br> Plaintiff, <br><br> vs. <br><br> EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; AMERICAN EXPRESS CO.; and, DISCOVER FINANCIAL SERVICES, LLC, <br><br> Defendants. | Case No.    3:22cv139-MPM-RP <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Denise Thomas ("Plaintiff"), by and through the undersigned counsel, hereby submits her Complaint and Demand for Jury Trial ("Complaint") against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union," collectively with Equifax and Experian, the "CRA Defendants"), American Express Co. ("Amex"), and Discover Financial Services, LLC ("Discover," collectively with Amex, the "Furnisher Defendants") (all collectively, the "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## JURISDICTION AND VENUE

1.    Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal laws: 15 U.S.C. § 1681 *et seq*.

2.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3.    Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at this District, such that personal jurisdiction is established.

1

## PARTIES

4.      Plaintiff Denise Thomas is a natural person who resides in Olive Branch, Mississippi, within the confines of Desoto County, Mississippi. Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

5.      Defendant Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Equifax is incorporated in Delaware, and its principal place of business is located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax is registered to accept service through Corporation Service Company, located at 2 Sun Court, suite 400, Peachtree Corners, Georgia 30092.

6.      Defendant Experian is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Experian is incorporated in Ohio, and it maintains its principal place of business and is registered to accept service at 475 Anton Boulevard, Costa Mesa, California 92626.

7.      Defendant Trans Union is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Trans Union is incorporated in Delaware, and its principal place of business is located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. Trans Union is registered to accept service through Prentice-Hall Corporation located at 801 Adlai Stevenson Drive, Springfield, Illinois 36106.

8.      Defendant Discover is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher" as that term is used by the FCRA. Discover is incorporated in Delaware, and its principal place of business is located at 2500 Lake Cook Road, Riverwoods, Illinois 60015. Discover is registered to accept service through CT Corporation Systems located at 208 SO LaSalle Street, Suite 814, Chicago, Illinois 60604.

9.      Defendant Amex is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and

a "furnisher" as that term is used by the FCRA. Amex is incorporated in New York, and its principal place of business is located at 200 Vesey Street, New York City, New York 10281. Amex is registered to accept service at 28 Liberty Street, New York, New York 10005.

10.     At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11.     Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

12.     In or around August 2021, Plaintiff received a letter from Amex notifying her it had denoted her as "deceased."

13.     Plaintiff, who continued living and breathing, was surprised, and confused to receive this letter.

14.     In addition to the notification that Plaintiff was being denoted as "deceased," Amex also offered its "condolences" to Plaintiff's husband concerning Plaintiff's death.

15.     Plaintiff was extremely upset her husband had received such condolences, and though Plaintiff's husband obviously knew she was not actually dead, he was deeply disturbed by having to read these words nevertheless.

16.     Plaintiff was unsure why Amex would think she was deceased, but she was immediately concerned with the impact being reported as "deceased" could potentially have on her credit.

17.     Plaintiff has always been diligent about maintaining a positive credit history, and she had intentions to purchase a vehicle within the following year, for which she expected to need

a car loan.

18.     In or around the second week of August 2021, Plaintiff obtained and reviewed copies of her credit reports from each of the CRA Defendants to determine if Amex was reporting her as "deceased" to the credit bureaus, causing harm to her credit scores and overall credit profiles.

19.     After reviewing her credit reports, Plaintiff's confusion grew substantially.

20.     Each of the CRA Defendants were reporting Plaintiff as "deceased" in her Amex tradeline (Account No. 3499************).

21.     In addition, each of the CRA Defendants were reporting Plaintiff as "deceased" in her Discover tradeline (Account No. 6011************).

22.     Upon information and belief, none of the CRA Defendants were providing a credit score in Plaintiff's credit reports.

23.     Upon information and belief, none of the CRA Defendants were able to generate a credit score for Plaintiff due to the "deceased" notation appearing in the Amex and Discover tradelines.

24.     Plaintiff was extremely upset. Her thoughts immediately turned to what a burden and frustration it would be to get these issues corrected.

25.     Plaintiff could not understand why or how the Furnisher Defendants had started reporting her as "deceased."

26.     Plaintiff's Amex tradeline reflects that Plaintiff paid on the account as agreed, and that the account was closed in July 2021.

27.     Plaintiff's Discover tradeline reflects that Plaintiff paid on the accounts as agreed, and that the account was closed in April 2021.

28.     It is unclear why either of the Furnisher Defendants would have updated Plaintiff's

information following the closure of both accounts to indicate that Plaintiff was "deceased."

29.     Upon information and belief, neither of the Furnisher Defendants received information from the Social Security Administration ("SSA") indicating Plaintiff was deceased.

30.     Upon information and belief, neither of the Furnisher Defendants contacted the SSA to attempt to confirm whether Plaintiff was deceased or not.

31.     More bewilderingly, Plaintiff could not understand why any of the CRA Defendants would include the "deceased" notation from either Amex or Discover in Plaintiff's credit file(s) and/or credit report(s).

32.     As detailed herein, Plaintiff took great care to maintain a positive credit profile with each of the credit bureaus. This included positive accounts – some with history dating back as far as the early 1980s – and numerous monthly payments on the tradelines associated with these accounts.

33.     Indeed, each of the CRA Defendants reported several payments Plaintiff's numerous creditors had received in the months of July 2021 and August 2021.

34.     Upon information and belief, each of the CRA Defendants received "Account Review" inquiries concerning Plaintiff's credit file(s) and/or consumer report(s) in July 2021 and/or August 2021.

35.     In other words, each of the CRA Defendants received substantial and consistent information concerning Plaintiff's ongoing credit activity and other indicators that Plaintiff remained alive – including in the time following the closure of Plaintiff's accounts with Amex and Discover.

36.     Upon information and belief, people who are dead do not make monthly credit payments on active accounts in the absence of fraud.

37.     Upon information and belief, none of the CRA Defendants received information from the SSA indicating Plaintiff was deceased.

38.     Upon information and belief, none of the CRA Defendants contacted the SSA to attempt to confirm whether Plaintiff was deceased or not.

39.     Therefore, upon information and belief, none of the CRA Defendants had any reasonable basis to believe or report that Plaintiff was "deceased."

40.     Instead, the CRA Defendants blindly relied on the information furnished by the Furnisher Defendants, even though this information was directly contradicted by **all other information** contained in Plaintiff's credit file(s) and consumer report(s).

41.     Upon information and belief, at least one creditor who made an "Account Review" inquiry concerning Plaintiff in August 2021 received a consumer report from each of the CRA Defendants which inaccurately reported Plaintiff as "deceased" in the Amex and Discover tradelines.

42.     Given Plaintiff's positive credit history, it is very likely she would be viewed as an ideal candidate for offers of credit based on "Account Review" inquiries. It is likely that Plaintiff did not receive credit offers she may have otherwise received due to one or more creditor believing her to be deceased based entirely on inaccurate credit reports from the CRA Defendants.

43.     Therefore, Plaintiff had already been harmed by the loss of potential credit opportunities.

44.     Despite being perplexed by the absurdity of the situation in which she found herself, Plaintiff set out to correct the flagrantly inaccurate information in her credit reports, in an effort to forestall any further harm to her.

45.     As such, on or about August 13, 2021, Plaintiff sent a letter to Experian,

communicating it was reporting her as deceased and that she was, in fact, alive.

46.     Concurrently, Plaintiff drafted a letter to the President of Experian which expressed her frustration and resentment and stated: "This has caused severe trauma in my life and my husband's. My husband has also received several requests for help on my funeral services. This has also caused him severe trauma."

47.     Upon information and belief, Plaintiff submitted disputes via letters to Equifax and Trans Union the same day, on or about August 13, 2021, disputing the same information and communicating the same information.

48.     Upon information and belief, one or more of the CRA Defendants forwarded Plaintiff's dispute(s) to both of the Furnisher Defendants.

49.     Upon information and belief, both of the Furnisher Defendants failed to reasonably reinvestigate Plaintiff's dispute(s).

50.     Upon information and belief, the Furnisher Defendants either did not investigate Plaintiff's dispute(s) at all, or simply confirmed what they were already reporting was accurate without reviewing the substance of Plaintiff's dispute(s).

51.     Had either of the Furnisher Defendants conducted **any** reinvestigation of any kind, each would have quickly determined that no evidence existed to indicate Plaintiff was deceased. Moreover, a substantial amount of evidence existed to show the plain reality, which was that Plaintiff remained alive.

52.     To that end, deceased people do not contact credit bureaus to dispute credit reporting. Therefore, Plaintiff's dispute(s) are evidence of Plaintiff remaining alive.

53.     On or about August 19, 2021, Plaintiff received notification from Experian that it had reinvestigated her dispute, and the dispute results were ready.

54. Experian's response included a section bearing the header "Messages from Your Experian Specialist." This section read: "DISPUTED ITEM NOT LISTED ON CREDIT REPORT."

55. Plaintiff assumed, based on this response, that the "deceased" notation had been removed, and all was well.

56. Along with Experian's response, it included a copy of Plaintiff's credit report. Plaintiff reviewed the Amex and Discover tradelines, only to see the word "Deceased" still remained in a field labeled "Responsibility" in both tradelines.

57. In short, Experian had not fixed its inaccurate reporting, and had not deleted the "deceased" notation from Plaintiff's file.

58. Plaintiff did not receive a response to her dispute(s) from either Equifax or Trans Union.

59. Upon information and belief, Equifax and Trans Union completed their respective reinvestigations of Plaintiff's dispute(s) and likewise failed to delete the "deceased" notations from Plaintiff's credit file(s).

60. Alternatively, upon information and belief, Equifax and Trans Union failed to conduct any reinvestigations at all concerning Plaintiff's dispute(s).

61. Over the following month, Plaintiff sent at least one (1) additional letter to each of Equifax and Trans Union, again disputing the inaccurate reporting by each that Plaintiff was "deceased."

62. Plaintiff received no response to her second set of disputes to Equifax and Trans Union.

63. Upon information and belief, the CRA Defendants failed to reasonably

8

reinvestigate Plaintiff's dispute(s). Instead, each of the CRA Defendants mindlessly parroted the inaccurate information being provided by the Furnisher Defendants without evaluating the substance of Plaintiff's dispute(s), or failed to conduct any reinvestigation at all.

64.     Plaintiff was furious. The information she provided each of the CRA Defendants should have been more than sufficient for each to conclusively determine she was not deceased.

65.     Determined to get the inaccurate reporting removed from her credit report, Plaintiff attempted a different tack.

66.     On or about August 25, 2021, Plaintiff contacted Experian by telephone to – again – dispute its inaccurate reporting in her credit report.

67.     Plaintiff believed by contacting Experian by telephone, Experian could easily identify the issue and correct it. However, Plaintiff was unable to speak with a human being due to the convoluted nature of Experian's phone menu system.

68.     Upon information and belief, Experian logged Plaintiff's call as a telephone dispute.

69.     Plaintiff received a notification the same day, August 25, 2021, that a second set of dispute results were ready.

70.     In other words, Experian conducted its second reinvestigation in less than one (1) day.

71.     Unfortunately, when Plaintiff reviewed her Experian credit report, the deceased notation remained in both the Amex and Discover tradelines.

72.     Upon information and belief, Experian again failed to reasonably reinvestigate Plaintiff's dispute.

73.     Plaintiff was appalled, and her patience was growing ever thinner. Hoping the third

time was the charm, in or around August or September 2021, Plaintiff contacted Experian again by mail to dispute its reporting of the "deceased" notation in Plaintiff's credit report.

74.     On or about September 28, 2021, Experian notified Plaintiff again that its reinvestigation was complete.

75.     Sadly, Experian had yet again failed to reasonably reinvestigate Plaintiff's dispute – the deceased reporting remained the same after Plaintiff had notified Experian on at least **three separate occasions** that she was not dead.

76.     Experian offered no indication for why it insisted Plaintiff was dead, nor did it at any time place an alert for fraud or identity theft on Plaintiff's credit file.

77.     All three of the CRA Defendants continued to report the "deceased" notation in Plaintiff's credit file(s) and credit report(s).

78.     Upon information and belief, each of the CRA Defendants have reason to believe that the Furnisher Defendants furnish inaccurate consumer data with some regularity.

79.     In the past three (3) years, the Consumer Financial Protection Bureau ("CFPB") has received approximately 9,712 complaints concerning Amex.

80.     In the past three (3) years, the CFPB has received approximately 8,957 complaints concerning Discover.

81.     Therefore, the CRA Defendants knew or should have known that each of the Furnisher Defendants were unreliable furnishers of consumer information.

82.     Despite ample reason to doubt the information provided by the Furnisher Defendants, multiple disputes from Plaintiff, and a plethora of ongoing evidence that Plaintiff remained alive, each of the CRA Defendants continued to erroneously report that Plaintiff was deceased.

83. Therefore, upon information and belief, each of the CRA Defendants failed to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information each reported in Plaintiff's consumer reports and consumer information each sold to third parties as required by the FCRA.

84. Upon information and belief, the CRA Defendants failed to maintain reasonable procedures to suppress inaccurate information furnished by the Furnisher Defendants, despite being on notice that the information was inaccurate.

85. Exhausted, and unsure how she could solve the problem with which she was faced, Plaintiff continued living her life.

86. On or about November 8, 2021, Plaintiff completed a credit application through non-party Magnolia Federal Credit Union ("Magnolia") in Jackson, Mississippi, in an attempt to secure credit related to Christmas shopping.

87. Upon information and belief, Magnolia obtained a copy of Plaintiff's Equifax credit report in conjunction with the credit application.

88. Upon information and belief, the Equifax credit report obtained by Magnolia included the "deceased" notation in the Amex and Discover tradelines.

89. Upon information and belief, the Equifax credit report obtained by Magnolia did not contain a credit score because of the "deceased" notation in the Amex and Discover tradelines.

90. Accordingly, upon information and belief, Plaintiff's credit application was denied because of Equifax's inaccurate reporting of Plaintiff as "deceased."

91. As the new year rolled around, Plaintiff, always diligent about her credit, endeavored to continue building positive credit history.

92. On or about January 6, 2022, Plaintiff applied for a credit card through non-party

QVC.

93.     Upon information and belief, QVC obtained and reviewed a copy of Plaintiff's credit reports from Experian and Trans Union.

94.     Upon information and belief, the Experian and Trans Union credit reports obtained by QVC included the "deceased" notation in the Amex and Discover tradelines.

95.     Upon information and belief, the Experian and Trans Union credit reports obtained by QVC did not contain a credit score because of the "deceased" notation in the Amex and Discover tradelines.

96.     Accordingly, Plaintiff's credit application was denied – due directly to the inaccurate reporting of Plaintiff as "deceased" by both Experian and Trans Union.

97.     Plaintiff was extremely embarrassed, frustrated, and upset by the circumstances. She felt helpless and felt as though the CRA Defendants were sullying her good name.

98.     Months later, Plaintiff determined the time was right to buy a new car. Plaintiff completed an application for credit, once again through Magnolia.

99.     Magnolia again obtained and reviewed Plaintiff's Equifax credit report.

100.     This time, Plaintiff was told directly by a representative of Magnolia that Equifax was reporting her as "deceased."

101.     Moreover, the Magnolia representative communicated to Plaintiff that the "deceased" notation was preventing Equifax from generating a credit score, and that because of this Magnolia was forced to deny Plaintiff's loan.

102.     Plaintiff was, again, absolutely humiliated. She had been a member of Magnolia's credit union for decades and was deeply embarrassed she suffered a credit denial due to obviously inaccurate information.

103.    Moreover, over the last thirty (30) years, Plaintiff has always been able to finance motor vehicles without involving her husband. Plaintiff was extremely humiliated and ashamed she had been forced to explain to her husband she could not finance her own vehicle because of the "deceased" reporting in her credit report(s), and ask for his help.

104.    The CRA Defendants have communicated that Plaintiff is "deceased" in countless credit reports, including those detailed above, but also from potential creditors who have conducted "Account Review" inquiries concerning Plaintiff's credit reports.

105.    In the time since Plaintiff's first disputes on or about August 16, 2021, at least eight (8) different entities have made "Account Review" inquiries concerning Plaintiff's Equifax credit report. Upon information and belief, all of the credit reports viewed by these entities contained the erroneous "deceased" notation in the Amex and Discover tradelines.

106.    In the time since Plaintiff's first disputes on or about August 16, 2021, at least seven (7) different entities have made "Account Review" inquiries concerning Plaintiff's Experian credit report. Upon information and belief, all of the credit reports viewed by these entities contained the erroneous "deceased" notation in the Amex and Discover tradelines.

107.    In the time since Plaintiff's first disputes on or about August 16, 2021, at least nine (9) different entities have made "Account Review" inquiries concerning Plaintiff's Trans Union credit report. Upon information and belief, all of the credit reports viewed by these entities contained the erroneous "deceased" notation in the Amex and Discover tradelines.

108.    Upon information and belief, the number of credit offerings Plaintiff has received has diminished substantially since each of the CRA Defendants began reporting Plaintiff as "deceased" in August 2021.

109.    Upon information and belief, Plaintiff's credit offerings have decreased directly

because of the "deceased" notation in her credit reports, despite her otherwise impeccable credit.

110.     Confusingly, included among the entities who have viewed Plaintiff's credit reports from each of the CRA Defendants since August 2021 are **both** of the Furnisher Defendants.

111.     In other words, despite purportedly believing that Plaintiff is not living, the Furnisher Defendants have conducted "Account Review" inquiries concerning Plaintiff, nonetheless.

112.     Throughout the past year, Plaintiff has experienced severe emotional distress as a result of the inaccurate consumer reporting at the hands of the CRA Defendants, caused by erroneous information furnished by the Furnisher Defendants.

113.     Plaintiff has frequently suffered from loss of sleep as a result of the issues harming her credit. She often struggles to fall asleep and/or stay asleep as she lies in bed at night, wondering if or when the issues with her credit will be fixed.

114.     Plaintiff has felt constant frustration and stress. She has relayed the story about her credit woes to friends and family members, and often worries about what would happen to her if her husband suddenly passed away. With the state of Plaintiff's credit, she knows she could not buy a home, a car, or do anything that requires a credit application without her husband.

115.     Moreover, Plaintiff has experienced several arguments and fights with her husband that would not have happened were it not for the extreme stress plaguing Plaintiff and her husband at the hands of the Defendants.

116.     There have been multiple days where Plaintiff has felt depressed and sad, and expressed a loss of appetite or desire to do anything.

117.     Moreover, Plaintiff wasted an inordinate amount of time disputing the obviously and flagrantly inaccurate information with each of the CRA Defendants. Rather than independently

investigate her dispute(s), each of the CRA Defendants merely passed on their statutory obligations to the Furnisher Defendants, each of whom clearly conducted either no reinvestigation at all, or, in the alternative, a woefully insufficient and unreasonable reinvestigation.

118. As of the filing of this Complaint, each of the CRA Defendants continue to report the "deceased" notation in Plaintiff's credit reports.

119. Upon information and belief, Equifax and Trans Union will not generate a credit score for Plaintiff due to the "deceased" notation in the Amex and Discover tradelines.

120. Plaintiff's Experian credit report states directly: "[W]e are unable to calculate and deliver your FICO Score at this time because at least one creditor has reported that this individual is deceased."

121. As a direct result of Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to stress, anxiety, mental anguish, sleepless nights, emotional distress, a substantial amount of wasted time, invasion of privacy, decreased creditworthiness, inability to apply for credit, credit denial, financial strain, and other damages continuing in nature.

## CAUSES OF ACTION

### COUNT I
### The CRA Defendant's Violations of 15 U.S.C. 15 § 1681e(b)

122. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

123. The FCRA requires consumer reporting agencies, like the CRA Defendants, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximal accuracy. 15 U.S.C. § 1681e(b).

124. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation,

15

maintenance, and dissemination of Plaintiff's consumer report(s).

125. Upon information and belief, the CRA Defendants have each been sued by other consumers in the past who have alleged their dispute procedures were unreasonable and violative of the FCRA.

126. Therefore, the CRA Defendants had actual notice of their deficient procedures.

127. In this case, however, the CRA Defendants received actual notice that their procedures were unreasonable as applied to Plaintiff.

128. It is wholly unreasonable to maintain procedures that allow a consumer reporting agency to report a consumer as "deceased" despite having possession of contradictory evidence.

129. Specifically, it was wholly unreasonable for each of the CRA Defendants to report Plaintiff as "deceased" in her credit file(s) and consumer report(s) despite the existence of numerous other active accounts, ongoing credit inquiries, and Plaintiff's dispute(s) notifying each of the CRA Defendants of this inaccurate reporting.

130. Plaintiff disputed the deceased notation in her consumer reports – multiple times – and provided the CRA Defendants with sufficient information and documentation to determine, conclusively, that Plaintiff was not deceased.

131. Indeed, Plaintiff disputed the "deceased" notation with Experian no fewer than three (3) times.

132. As a result of the CRA Defendants' failures to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

133. The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful. Therefore, the CRA Defendants are each individually liable to Plaintiff for actual, statutory, and punitive

damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

134.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, the CRA Defendants are each individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

135.    In any event, the CRA Defendants are each individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT II

### The CRA Defendants' Violations of 15 U.S.C. § 1681i

136.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

137.    Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their credit file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

138.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate.

139.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to record the current status of the disputed information or delete the item from Plaintiff's credit report.

140.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

141.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly

17

correct the disputed inaccurate information in Plaintiff's credit file upon reinvestigation of Plaintiff's disputes.

142.    As a result of the CRA Defendants' violations of 15 U.S.C. § 1681i, Plaintiff has suffered statutory and actual damages as detailed herein.

143.    Upon information and belief, the CRA Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

144.    Therefore, the CRA Defendants acted consciously in failing to adhere to their obligations under the FCRA.

145.    The CRA Defendants' violations of 15 U.S.C. § 1681i were willful. Therefore, the CRA Defendants are each individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

146.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681i were negligent. Therefore, the CRA Defendants are each individually liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. 15 U.S.C. § 1681o.

147.    In any event, the CRA Defendants are each liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT III

### The Furnisher Defendants' Violations of 15 U.S.C. § 1681s-2(b)

148.    Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein.

149.    At all times pertinent hereto, the Furnisher Defendants were each a "person" as that term is defined by 15 U.S.C. § 168la(b) and a "furnisher of information" providing information

about Plaintiff to the three major credit reporting agencies, the CRA Defendants.

150.    The Furnisher Defendants each have a duty to provide accurate information to consumer reporting agencies. See 15 U.S.C. § 1681s-2(a).

151.    The Furnisher Defendants each have a duty to promptly correct inaccurate information after receiving notice of a consumer's credit dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(a).

152.    The Furnisher Defendants also each have an obligation under 15 U.S.C. § 1681s-2(b) to: conduct an investigation after a consumer reporting agency notifies it that a consumer disputed the accuracy of the information it furnished; review all relevant information during its investigation of the dispute; report the results of the investigation to the relevant consumer reporting agency; and if the investigation reveals that the furnished information was incomplete or inaccurate, notify every consumer reporting agency that received the deficient information of the investigation results.

153.    If the investigation reveals the disputed information is incomplete, inaccurate, or unverifiable, it must be modified, deleted, or permanently blocked. 15 U.S.C. § 1681 s-2(b)(1)(E).

154.    Upon information and belief, one or more of the CRA Defendants forwarded Plaintiff's disputes to each of the Furnisher Defendants in or around August 2021.

155.    Upon information and belief, by example only and without limitation, the Furnisher Defendants each violated 15 U.S.C. § 1681 s-2(b)(1)(E) when they failed to delete and permanently block the "deceased" notation from the information each was reporting to the CRA Defendants.

156.    Upon information and belief, by example only and without limitation, the Furnisher Defendants each violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate

Plaintiff's disputes after being notified of their existence by one or more of the CRA Defendants.

157.    Upon information and belief, by example only and without limitation, the Furnisher Defendants each failed to review all relevant information while investigating Plaintiff's disputes, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

158.    Upon information and belief, the Furnisher Defendants' actions in the instant matter are representative of their normal policies and procedures.

159.    Upon information and belief, the Furnisher Defendants' regular procedures only require them to complete a cursory review of consumer disputes, regardless of their content, magnitude, or frequency.

160.    Upon information and belief, the Furnisher Defendants' procedures only require them to respond to disputes with basic consumer information without conducting a reasonable investigation of the disputed information.

161.    In sum, each of the Furnisher Defendants' conduct violated § 1681s-2(b) of the FCRA.

162.    Upon information and belief, the Furnisher Defendants knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

163.    Therefore, the Furnisher Defendants acted consciously in failing to adhere to their obligations under the FCRA.

164.    Each of the Furnisher Defendants' willfully and/or negligently violated the foregoing provisions of the FCRA in the following manner:

   a.    By willfully and/or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;

20

b.    By willfully and/or negligently failing to review all relevant information concerning whether Plaintiff was deceased;

c.    By willfully and/or negligently failing to report the results of its investigation of the inaccurate information to all credit reporting agencies;

d.    By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

e.    By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

f.    By willfully and/or negligently failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to credit reporting agencies; and

g.    By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

165.    The Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b) were willful. Therefore, the Furnisher Defendants are each individually liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

166.    Alternatively, the Furnisher Defendants' violations of 15 U.S.C. § 1681s-2(b) were negligent. Therefore, the Furnisher Defendants are each individually liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

167.    In any event, the Furnisher Defendants are each individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

### TRIAL BY JURY

168.    Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Denise Thomas respectfully requests judgment be entered against Defendants, for the following:

A.    Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

B.      Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

C.      Punitive damages pursuant to 15 U.S.C. § 1681n;

D.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

E.      All pre-judgment and post-judgment interest as may be allowed under the law; and

F.      Any other and further relief as the Court may deem just and proper.

Dated this the 14th day of July 2022.

PLAINTIFF DENISE MOULDS THOMAS,

By: *Brian K. Herrington*
Brian K. Herrington, MB# 10204
CHHABRA GIBBS & HERRINGTON PLLC
120 N. Congress Street, Suite 200
Jackson, MS 39201
T: 601-326-0820
F: 601-948-8010
E: bherrington@nationalclasslawyers.com

Counsel for Plaintiff